621 So.2d 455 (1993)
Deborah MURPHY, Appellant,
v.
Phillip MURPHY, Appellee.
No. 91-2399.
District Court of Appeal of Florida, Fourth District.
March 17, 1993.
Rehearing Denied June 2, 1993.
*456 Samuel Sorota, North Miami Beach, for appellant.
David F. Monaco, Davie, for appellee.
FARMER, Judge.
After a trial on the merits of a child custody issue, the trial judge's final order said in relevant part:
1. That it is in the best interest of the minor children [names omitted] that the primary residential custody of the aforesaid minor children be with and is awarded to the [father] provided he is gainfully employed.
* * * * * *
5. The Court, being aware of the allegations of substance abuse, orders that both parties are to refrain from the abuse of alcohol and any other controlled substance and if it comes to the Court's attention that either party is abusing alcohol or any other controlled substance, upon proof thereof the Court will deal with the offending party severely. * * *
In our decision today, we explicitly acknowledge that there is nothing in section 61.13(3) to require a trial judge to set out written findings of fact in a custody decision. In the first place, section 61.13(3) visibly lacks a requirement that the judge make written findings on its factors. On the contrary, it merely provides that:
(3) For purposes of shared parental responsibility and primary residence, the best interests of the child shall include *457 an evaluation of all factors affecting the welfare and interests of the child, including, but not limited to * * *. [e.s.]
The foregoing is followed by a list of the specific factors. The words "include an evaluation" in such a descriptive statute are not ordinarily understood to mean "written findings."
On the other hand, whenever in chapter 61 the legislature actually wanted the trial judge to spell out factual findings in written judgments, it knew how to say so. E.g., § 61.075(3), Fla. Stat. (1991) ("The distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific written findings of fact as to the following * * *."); § 61.08(1), Fla. Stat. (1991) ("In all dissolution actions, the court shall include findings of fact relative to the factors enumerated in subsection (2) supporting an award or denial of alimony."); and § 61.30(1)(a), Fla. Stat. (1991) ("The trier of fact may order payment of child support in an amount different from such guideline amount upon a written finding, or a specific finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate.").
Nor, as a matter of general application, should we convert a statutory requirement that a judge consider some specific fact into the quite separate obligation to make a written finding memorializing the judge's consideration of that fact. The crowded dockets of our trial court judges do not allow them the leisure to take the time in every civil case to explain their reasoning and to detail all of the specific factual findings they have made along the way.
Moreover, there are unusually good reasons for trial judges not to say in print how they have resolved contested child custody issues as they have. The most obvious is that the best interests of the child may be ill-served if the judge does so. It is no accident that the legislature has seen fit to make court records dealing with juveniles confidential and not available for public inspection. See §§ 39.045, 39.069, 39.411, 39.443 and 39.471, Fla. Stat. (1991). It would seem ironic indeed to keep confidential the records of juvenile offenders, but not the private facts regarding children whose only offense is that their parents are getting divorced. See and compare Barron v. Florida Freedom Newspapers Inc., 531 So.2d 113 (Fla. 1988) (privacy rights of children in dissolution of marriage proceeding do not automatically justify closure of court files; party seeking closure has burden of establishing necessity therefor).
We distinguish Lovelady v. Lovelady, 576 So.2d 946 (Fla. 2d DCA 1991). In that case Judge Frank explained the reversal of the custody decision as follows:
The problem with the final judgment is that it contains no reference to the trial court's findings in regard to primary residence. In fact, the judgment does not contain even a bare conclusion that the best interests of the children would be served by the living arrangements ordered. We are led to the conclusion, therefore, that the trial court may have overlooked the necessity to evaluate the relevant factors, and we must remand to the trial court to make the requisite findings. [e.s.]
576 So.2d at 947. A "reference" to a finding means only that one's attention is directed to a factual resolution, not that the resolution is set out in full. The actual finding could have been made on the record at the hearing. Or it could be implicit in an ultimate finding or conclusion. We thus read Lovelady as holding merely that the absence of even an explicit finding on the best interests of the children, in light of the record itself, suggested that the trial judge forgot to evaluate the factors mentioned in the statute. That is not the same thing, however, as saying that every custody decree must contain written findings on the section 61.13(3) factors.
Appellant argues that this kind of ultimate factual finding  that custody with one or another parent is in the best interests of the children  is by itself insufficient to sustain a custody judgment. We reject that argument and cannot help wondering how many decisions without opinion of the various district courts of appeal in *458 this state conceal an appellate determination that such a statement is quite enough, assuming record evidence (as here) to support it.
Appellant attempts to justify a reversal by arguing that there is no evidence that would put into question the children's relationship with her. The trial judge explained his final order, saying:
I frankly did not believe [appellant's] testimony. I thought she was not being truthful with the Court with certain representations she made to the Court regarding this man she is seeing, number one, and some of the things that were going on, as far as her connections with the children. That was part of the reason that I entered the Judgment in the manner I did.
There was testimony that the children had been left at home alone until late in the evening and that when the mother finally returned home she was obviously inebriated. The father also testified that the mother's lifestyle was not in the children's best interests. The mother specifically denied that her boyfriend was living in the home with the children.
We cannot imagine a clearer resolution of contested issues against one party on the basis of credibility. This kind of resolution is the paradigm of what trial courts do, as opposed to what appellate courts do. Appellant has shown us no basis to avoid well established rules of appellate practice as to the trial judge's factual findings.
We recognize that divorced parents with children are entitled to have new social lives after divorce, including the right to have loving relationships with other people.[1] We cannot confuse that right with the entirely separate issue as to whether post-divorce conduct has affected the best interests of young children. The trial court found that the wife's conduct had adversely affected the interests of the children. There is no principled basis for setting aside his decision on the rationale argued here.
We also reject appellant's contention that custody (or primary residence) was not placed in issue by the father's pleadings. In paragraph B of her prayer for relief, the mother asked that she be given primary residential custody. The father filed an Answer for himself in which he specifically stated that he did not agree with paragraph B of the mother's petition. Rule 1.110(g), Florida Rules of Civil Procedure, requires that all pleadings be construed to do substantial justice. It would be decidedly unjust to construe the father's pleading in any way other than to place the custody question at issue.
We also find no error in the trial judge's bifurcation of the proceedings. In its earlier judgment dissolving the marriage, the trial court expressly retained jurisdiction to hear the remaining issue of child custody. At the final custody hearing, both parties presented evidence. Appellant points to no particular prejudice from the bifurcation.
We also disagree with appellant's argument that at a final custody hearing a trial judge is bound by any factual findings made by a master on the issue of temporary relief. The parent who was awarded temporary custody is entitled to no presumption on account of the temporary award. Where the issue of custody is fully tried by both parents at the final hearing, it is entirely permissible for the trial judge to rethink the custody decision in light of the evidence then presented.
This case has troubled all of us greatly, for the trial court's decision changes the custody of young children from mother to father. In the end we have simply concluded that the trial court's decision is supported by evidence and need not be expressly articulated beyond what the judge *459 has already set down on paper. His decision is therefore
AFFIRMED.
OWEN, WILLIAM C., Jr., Senior Judge, concurs.
POLEN, J., concurs specially with opinion.
POLEN, Judge, concurring specially.
While I concur with the result reached by the majority, I write separately to note a procedural issue raised during this appeal. The majority opinion quotes a statement by the trial judge as to one of the reasons for his decision on primary residence of the children: "I frankly did not believe [appellant's] testimony." Normally, when the finder of fact makes such a statement, either at the conclusion of the trial in explaining his or her ruling, or in the judgment itself, this ends the discussion as to whether a reviewing court can reverse a decision based on such a finding of noncredibility.
In this case, however, the quoted statement was made at a September 5, 1991, hearing on appellant's motions to stay and for rehearing. The final judgment had been entered on August 17, 1991, and the notice of appeal filed August 21, 1991. Appellant has moved to strike from appellee's answer brief and appendix the quoted statement and all references to the post-final-judgment proceedings. Obviously, we have denied appellant's motion to strike (a separate order will be issued by the clerk), but I wish to note this is the exception  not the norm.
In this case only, and without suggesting this is precedent for other appellate litigants to seek to bring before us, except by agreement, matters that occur after the notice of appeal is filed, I believe it is critical to this court's resolution of the issues presented to know that the trial court found one of the parties to be lacking in credibility. I think this goes a long way towards "filling the gaps" addressed in Judge Farmer's analysis. That is, while we recognize that trial courts are not required to (and perhaps should not be required to) make specific findings as to their reasons for deciding primary residential care of minor children, the statutory mandate to "consider the criteria" can sometimes lead to the dilemma this case has presented. Is it enough to conclude that this is "in the best interests of the children," particularly where the result, as here, is to change primary residence from one parent to the other?
To be sure, the record does not present either of the parties as an ideal parent. As the majority suggests, the ones who may suffer the most from this litigation and the parties ongoing adversarial posture are the innocent non-parties, the children. I also fear that we may have inadvertently added to the potential harm, simply by "doing our jobs" in bringing this matter to appellate resolution. See Judge Glickstein's concurring/dissenting opinion in French v. French, 452 So.2d 647, 651 (Fla. 4th DCA 1984).
Speaking solely for myself, I deem the quoted statement from Judge Ward at the September 5, 1991, hearing to be a major factor in my joining in this court's disposition today. But for that, I may well have been persuaded the other way.

ON MOTION FOR REHEARING
We deny appellant's motion for rehearing in which she calls our attention to Braman v. Braman, 602 So.2d 682 (Fla. 2d DCA 1992) (trial court required to "enter appropriate findings disclosing its evaluation of" section 61.13(3) criteria in awarding sole parental responsibility to one parent). We reject Braman and certify that our decision in this case conflicts with it.
REHEARING DENIED; CONFLICT CERTIFIED.
POLEN, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] We also recognize that the mere fact that the parent has sexual relations with other people does not, by itself, affect the best interests of the children. In a particular case, however, a parent's conduct in pursuing the right to have sexual relations with others can affect the best interests of minor children. A court is certainly justified in considering such conduct in making the custody decision where the pleadings and proof show that a parent's conduct has detrimentally affected children.